[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Anthony Ambrose, appeals from the final decision of the defendant, Arthur J. Rocque, commissioner of the department of environmental protection (Commissioner), granting the application of the defendant, Grey Rock Development, LLC (Grey Rock), to construct a single-family residence and conduct other regulated wetland activity on Lot #3, Robin Road Estates, in Seymour, Connecticut. The commissioner acted pursuant to General Statutes § 22a-42a (c) (1),[1] after concluding that the town of Seymour inland wetlands commission (SIWC) had failed to act on Grey Rock's application within the time prescribed by law. The plaintiff brings this appeal pursuant to General Statutes §4-183.[2]
The administrative record establishes the following relevant facts. On April 14, 1999, Grey Rock submitted an application to the SIWC for the development of Lot #3 in the Robin Road Estates in Seymour. The application proposed the construction of a single-family residence with access driveway. The application initially appeared on the agenda of the SIWC for the next regularly scheduled meeting on April 26, 1999. (Return of Record (ROR), Proposed Final Decision (PFD), p. 4, ¶¶ 2-3, pp. 10-11, ¶ 22; Court Exhibits 1 and 2.) The application was subsequently discussed at the May, July, and August SIWC meetings, but the SIWC took no final action on the application during that time. (ROR, PFD, p. 11, ¶ 23; Exhibit DEP-8; 7/11/00 Transcript, p. 30.) On September 23, 1999, Grey Rock filed a revised "Site Development Erosion Control Plan, Lot #3, Robin Road Estates" with the SIWC, which was discussed at the September 27, 1999 SIWC meeting. (Court Exhibit 3.) At that meeting, the SIWC classified the revised site plan as likely to have "a significant impact" on the inland wetlands and a public hearing on the application was scheduled for October 25, 1999. (Court Exhibit 6, p. 10.)
Joseph Coppola, the attorney for Grey Rock, appeared at the October CT Page 3104 25, 1999 SIWC hearing and informed the commission that because it had failed to act on the application within the sixty-five day period prescribed by § 22a-42a (c) (1), Grey Rock had taken the application to the DEP. (Court Exhibit 6, p. 12.) Notwithstanding Coppola's remarks, the SIWC continued the hearing and, on December 8, 1999, denied the application. As reasons for denying the application, the SIWC found that "[t]he application as submitted does not comply with the `intent and purpose' of the Inland Wetlands Regulations for The Town of Seymour. The purpose of the regulations is to `protect, preserve and regulate' the use of wetlands and watercourses . . .
Roman S. Mroinski of the New Haven County Soil And Water Conservation District identified the soils in the proposed dwelling location as `Aquent soil' and suggested the site as `being less than marginal' . . . The proposed, regulated activity is significant and . . . no reasonable alternative currently exists. The destruction of the natural habitat of the plants and animals that depend on the use of this wetland is not justified by the economic benefit the proposed project would bring to the Town of Seymour." (Appeal, Exhibit A, p. 3.)
On October 21, 1999, four days before the October 25, 1999 SIWC hearing, Grey Rock submitted a similar application to the department of environmental protection (DEP). (ROR, PFD, pp. 1, 11, ¶ 24; Exhibit App-1; 7/11/00 Transcript, pp. 30-31.) The DEP application sought approval of the revised site plan, not the April 1999 plan. Ambrose v.Commissioner of DEP, Superior Court, judicial district of New Britain, Docket No. CV 020512642 (April 4, 2002, Schuman, J.). After a public hearing on the application, a department hearing officer submitted a proposed final decision recommending that the commissioner issue the requested permit, which decision was adopted by the commissioner on December 6, 2000, approximately one year after the SIWC denied the same plan. (ROR, PFD, pp. 2-3, 17.)
On January 17, 2001, the plaintiff filed the present appeal from the commissioner's approval of the application. As grounds for the appeal, the plaintiff alleges that the DEP was without jurisdiction to accept or consider Grey Rock's application because the application was still pending before the SIWC and/or because the new site plan submitted to the SIWC on September 27, 1999, contained extensive and significant revisions and therefore constituted a new application for the purposes of calculating the time limitations under § 22a-42a (c) (1). (Appeal, ¶ 17(a).) The plaintiff further alleges that the evidence in the record does not support the commissioner's decision. (Appeal, ¶ 17(b).) CT Page 3105
On April 4, 2001, the court, Schuman, J., remanded the case to the commissioner for further findings to determine whether the DEP had jurisdiction over the Grey Rock application. The court stated: "There is no dispute that there was no public hearing on the April 1999 application, that the SIWC did not act on that application within sixty-five days from its receipt, and that the SIWC did not obtain an extension of time. The parties do dispute whether the material filed in September 1999 constituted a new `application' so as to trigger a new time period that would make Grey Rock's appeal to the department premature. The hearing officer did not address this issue, which is of critical importance in resolving this appeal." Ambrose v. Commissioner ofDEP, supra, Superior Court, Docket No. CV 02 0512642. The court further ordered that the administrative record be supplemented "with six court exhibits in order to remedy some confusion in the existing record and to add several items that the [department] had in its files but were not presented to the hearing officer. Court Exhibits 1 and 2 comprise the application submitted to the SIWC in April 1999. Court Exhibit 3 is the document submitted to the SIWC in September 1999. Court Exhibit 4 is a schematic attached to the application submitted to the department in October 1999. Court Exhibits 5 and 6 consist of correspondence between the department and the Chairman of the SIWC." Id., n. 1.
On August 22, 2002, the commissioner rendered a final decision on remand, which found that "the revised site plan submitted by Grey Rock to the SIWC in September 1999 was not a `separate and distinct' application that would trigger a new application but, rather, a revision to the original application submitted to the SIWC on April 14, 1999." (Final Decision After Remand, p. 6.) The commissioner also found that "[e]ven if the September 1999 submittal was viewed as an application as opposed to a revised site plan accompanying a previously submitted application and site plan, the site plan submitted by the applicant in September 1999 was substantially the same as the site plan submitted on April 14, 1999." (Id.)
General Statutes § 4-183 (j) defines the scope of judicial review of an administrative agency's action. A reviewing court may reverse or modify an administrative decision only where "substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. General Statutes 4-183 (j)." CT Page 3106
Whether the DEP had Jurisdiction Over the Grey Rock Application
In University Realty, Inc. v. Planning Commission, 3 Conn. App. 556,563, n. 7, 490 A.2d 96 (1985), the Appellate Court stated that "a revised site plan may be submitted to a zoning authority which differs so substantially from the original that it could itself constitute a revised application, triggering a new sixty-five day period so as to give the authority ample time to review it." Id. The issue before this court, however, is not simply whether Grey Rock's September 23, 1999 site plan differed substantially from the original site plan but, also, who should have decided the issue in the first place — the DEP commissioner or the local inland wetlands commission. In the court's opinion, it was for the SIWC to decide the issue. Accordingly, the court finds that the commissioner was without authority to decide Grey Rock's application and sustains the plaintiff's appeal on that ground.[3]
The plaintiff argues, and the evidence supports his argument, that the SIWC considered the revised site plan a new application. In a letter to the DEP hearing officer, Arthur Davies, chairman of the SIWC, wrote that on September 27, 1999, the commissioner received "a new application and a new map showing considerable additional activity in the review area." (Court Exhibit 6, p. 1.) The minutes from the September 27, 1999 meeting of the SIWC state: "Don Smith Jr., P.E. and Partner of Grey Rock Development presented revised plans . . . Since revisions have occurred to the Wetland regulations, this application needs to be classified. Mr. Looker informed Commission members that if they are to classify this application now as significant impact on wetlands, then a Public Hearing will need to be scheduled." (Id., p. 10.) Thereafter, the commission voted to classify the application as likely to have a "significant impact" and a public hearing was scheduled for October 25, 1999. (Id.)
General Statutes § 22a-42[4] delegates primary jurisdiction over the regulation of inland wetlands and watercourses to municipalities. "The wetlands statute delegates the power to regulate wetlands and watercourses within its territorial limits to the municipality. It is well settled that a commission empowered to regulate the wetlands within its jurisdiction is afforded discretion in carrying out its duties."Consolini v. Inland Wetlands Commission, 29 Conn. App. 12, 15, 612 A.2d 803
(1992). "The local inland wetlands agency was given the sole authority to license and regulate wetland activities, consistent with the factors set forth by the legislature in 22a-41. By designing the statutory scheme in this manner, the legislature gave broad discretion to local agencies to oversee wetland activities." Samperi v. Inland Wetlands Agency,226 Conn. 579, 591-92, 628 A.2d 1286 (1993). CT Page 3107
In the court's view, the broad powers conferred upon municipalities under § 22a-42 include the authority to determine whether a revised site plan, submitted as part of an application, differs from the original site plan so substantially that it constitutes a new application. Although the court has found no case precisely on point,[5] such a view is consistent with the reasoning and holding of our Supreme and Appellate Courts in cases that have raised similar issues. In Fiorilla v. ZoningBoard of Appeals, 144 Conn. 275, 129 A.2d 619 (1957), for example, the issue was whether the local zoning board, in granting an application for a variance, had reversed an earlier decision on a similar application. The court stated: "[I]t is for the administrative agency, in the first instance, to decide whether the requested relief in both applications is substantially the same. Its determination will be disturbed only if its discretion was abused." Id., 279. See also Bradley v. Inland WetlandsAgency, 28 Conn. 48, 51, 609 (A.2d 1043 (1992) ("It is unnecessary for this court to determine whether the 1988 and 1989 applications sought the same relief. The determination as to whether the application under review is substantially the same as the prior application and that circumstances and conditions have not changed so as to affect materially the merits of the application is for the defendant [inland wetlands commission] to determine in the first instance.")
Section 22a-42a (c) (1) provides for DEP review of an application only where "the inland wetlands agency, or its agent, fails to act on any application within thirty-five days after the completion of a public hearing or in the absence of a public hearing within sixty-five days from the date of receipt of the application . . . the applicant may file such application with the Commissioner of Environmental Protection who shall review and act on such application in accordance with this section." General Statues § 22a-42a (c) (1). The application referred to in § 22a-42a (c) (1) is, of course, the application which the local inland wetlands agency failed to act on within the prescribed period. The record establishes, however, that Grey Rock did not file the April 1999 site plan with the commissioner but, instead, filed the September 1999 revised plan. Indeed, in the DEP application, Grey Rock refers to the April site plan as "a prior site plan" which was "abandoned in lieu of the current plan." (Exhibit App-1.)
The court is not persuaded by the commissioner's argument that, for the purposes of § 22a-42a (c) (1), the application submitted to the commissioner was the same application submitted to the SIWC in April 1999 because it "contained the same purpose, that is, to construct a single family house and driveway." (Defendant's Brief, p. 12, n. 6.) Pursuant to the commissioner's argument, "Grey Rock's reference to having `abandoned' CT Page 3108 the original plan only refers to the site plan accompanying the application to construct a residential dwelling with an accessway involving regulated activities. The application, therefore, did not change in any way whatsoever; only the site plan changed . . ." (Id., pp. 12-13.)
The court declines to adopt the commissioner's definition of the term "application" for the purposes of applying § 22a-42a (c) (1) to the facts of this case. Common sense dictates that it is the site plan, not a single sentence description of the project,[6] which allows an inland wetlands commission to assess the impact of a proposal on protected areas and to determine whether any feasible and prudent alternative to an applicant's plan exists, a determination the commission is required to make under General Statues § 22a-41.[7]
The commissioner also argues that the decision relied on by the plaintiff, University Realty, Inc. v. Planning Commission, supra,3 Conn. App. 556, undermines the plaintiff's argument since the Appellate Court held in that case that the sixty-five day time constraint in General Statutes § 8-7d (b)[8] relates to the application, and not to the maps or plans which are incidental thereto. (Defendant's Brief After Remand, pp. 9-10.)
University Realty, Inc. v. Planning Commission involved an appeal by a local planning commission from a decision by the trial court sustaining the plaintiffs' appeal from a decision of the commission denying the plaintiffs' application for approval of a site plan. The Appellate Court affirmed the trial court's determination that a certificate of approval had to be issued because the commission had not, as mandated by statute General Statutes § 8-7d (b), either rendered a decision on the application within sixty-five days of its receipt or obtained the plaintiffs' consent to an extension of that sixty-five day period.University Realty, Inc. v. Planning Commission, supra, 3 Conn. App. 563. As in the present case, the defendant argued that a revised site plan had been submitted, triggering a new sixty-five day period. Id. Unlike in the present case, however, evidence on the issue of whether a revised plan had been submitted and when it was submitted was found by the court to be confusing and, ultimately, inconclusive. Id., p. 559, n. 4. The court emphasized that its decision was limited to the facts "in this record" and recognized "the possibility that a revised site plan may be submitted to a zoning authority which differs so substantially from the original that it could itself constitute a revised application, triggering a new sixty-five-day period so as to give the authority ample time to review it. This record, however, does not support such a finding. Since it does not contain the original site plan, we have no basis for such a CT Page 3109 comparison." Id., pp. 561 564, n. 7.
The facts in the present case are distinguishable from UniversityRealty, Inc. v. Planning Commission in that, here, the record supports a finding that a revised site plan was submitted to the SIWC and that the SIWC considered the revised plan to be a new application.[9] Under § 22a-42a (c) (1), the SIWC had "thirty-five days after the completion of a public hearing" in which to render a decision on the application. The commissioner's consideration of that application was, accordingly, premature.[10]
For the foregoing reasons, the plaintiff's appeal is sustained.
OWENS, J.